IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DOROTHY NELL MCGOWAN**                                                                 **PLAINTIFF**

**v.**                                                              **CIVIL ACTION NO.  2:15-cv-144-MTP**

**CAROLYN W. COLVIN,**                                                                  **DEFENDANT**
**Commissioner of Social Security Administration**

## OPINION AND ORDER

Plaintiff Dorothy Nell McGowan brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits and supplemental security income.  This matter is now before the Court on the Defendant's Motion to Affirm the Commissioner's Decision [17].  Having considered the pleadings, the record, and the applicable law, and being fully advised in the premises, the Court finds that the Commissioner's decision should be AFFIRMED.

## PROCEDURAL HISTORY

On May 23, 2012, the Plaintiff filed for a period of disability, disability insurance benefits, and supplemental security income, alleging disability as of August 27, 2011.  (Administrative Record [12] at 16, 242-249.)[1]  The Plaintiff claimed that she was disabled because of "headaches, ruptured disks in her neck, inability to use her right arm, and tumors." ([12] at 22.)  This application was denied initially and upon reconsideration. ([12] at 16, 150-55.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ([12] at 16, 156-57.)

---

[1] For ease of reference and pursuant to the Court's Order [5] directing filing of briefs, the administrative record is cited to herein by reference to this Court's docket number and docket page number, not the Administrative Record page number.

1

On February 24, 2014, a hearing was convened before ALJ Daniel L. Horton. ([12] at 16.) The ALJ heard testimony from the Plaintiff and Julia A. Russell, a Vocational Expert ("VE"). ([12] at 16, 22.) On May 14, 2014, the ALJ issued a finding that the Plaintiff was not disabled. ([12] at 16-27.) The Plaintiff appealed the decision to the Appeals Council. ([12] at 5-9.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([12] at 5-9.)

Plaintiff filed her Complaint on November 2, 2015, requesting an order from this Court reversing or remanding the Commissioner's final decision. (Complaint [1].) The Commissioner answered the Complaint, denying that Plaintiff is entitled to any relief. (Answer [11].) In addition, the Commissioner filed a motion to affirm the final decision. (Motion [17] and Memorandum in Support [18].) Plaintiff did not file a motion for summary judgment; however, Plaintiff filed a memorandum in support of a motion for summary judgment. (Memorandum in Support [16].) The parties have briefed the issues in this matter pursuant to the Court's Order [5], and the matter is now ripe for decision.

## MEDICAL/FACTUAL HISTORY

Plaintiff was fifty-two years old at the time of the ALJ's decision on May 14, 2014. ([12] at 242, 244.) Her alleged disability onset date was August 27, 2011. ([12] at 16.) She completed the 11th grade and has past work experience as a certified nurse's assistant, a fast food worker, a security system monitor, and a loader/unloader. ([12] at 26, 38, 53.)

Initially, Plaintiff alleged she was disabled by headaches, ruptured disks in her neck, inability to use her right arm, and tumors. ([12] at 278.) However, at the ALJ hearing, she testified to back and neck injuries caused by a fall while working at Popeye's in 2007 and to other numerous physical limitations as well as psychological limitations. ([12] at 22.) The record

reflects that various physical and mental medical examinations took place from February 2008 to August 2013. ([12] at 23, 24.)

In February 2008, an MRI of Plaintiff's lumbar spine showed degenerative disc disease[2] with facet arthrosis[3] at L4-L5 and L5-S-1. ([12] at 23, 98.)  In September 2011, Plaintiff sought treatment from a nurse practitioner at Lumberton Family Health Center due to back pain, and the nurse practitioner noted Plaintiff had an antalgic gait,[4] lumbar muscle spasms, and hip and back tenderness. ([12] at 485.)  Plaintiff reported back pain at Picayune Health Service in October and December of 2011 and in July of 2012. ([12] at 417, 422, 424.)  Plaintiff had also reported back pain at Manna Ministry Medical Clinic in June 2012. ([12] at 375.)

In August 2012, Plaintiff received a physical examination from State agency physician, Dr. Coulter, who reported no objective medical diagnoses[5] and found that none of her conditions would impose any limitations on her for the next year. ([12] at 414-15.)  In September 2012, State agency physician, Dr. Gibson, completed a medical analysis, concurred with Dr. Coulter's findings, and documented her conditions as non-severe. ([12] at 114.)  State agency physician,

---

[2] Degenerative disc disease refers to a condition in which pain is caused from a disc that loses integrity. *Arthritis Foundation*, http://www.arthritis.org/about-arthritis/types/degenerative-disc-disease/ (last visited August 10, 2016).

[3] Facet is a small smooth area on a bone or other firm structure, usually an articular surface covered in life with articular cartilage. (Stedmans Medical Dictionary 313360). Arthrosis is a degenerative joint change. (Stedmans Medical Dictionary 76390).

[4] Antalgic gait is a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase. Dorland's Illustrated Medical Dictionary 859 (29th ed. 2000).

[5] Romberg's, Tinel's, and Phalen's test were negative; all range of motions measurements were normal; there was no evidence of muscle spasms or tenderness; ambulation with and without her cane was normal, Plaintiff could also "tandem walk, walk on toes, walk on heels, and squat." ([12] at 414-15.)

3

Dr. Kossman, affirmed Dr. Coulter's findings upon reconsideration in October 2012. ([12] at 131.)

In January 2013, Plaintiff sought treatment at Forrest General for chest pain and shortness of breath. She was diagnosed with COPD[6] and with a non-ST elevation myocardial infraction.[7] ([12] at 534, 548.) She returned to Forrest General the following month because of back pain and was diagnosed with mild degenerative spondylosis[8] at C5-C6 and C6-C7. ([12] at 466.)

In August 2013, Plaintiff was diagnosed with a breast mass and underwent two biopsies that revealed it was benign. ([12] at 574.) Plaintiff had previously been diagnosed with gastroesophageal reflux disease, which was stable in February 2011 ([12] at 405) and borderline diabetes mellitus, which was controlled in August 2013 and October 2013 ([12] at 475, 549.).

Plaintiff was previously diagnosed with depression in September and December of 2009 and February 2011. ([12] at 23.) In August 2012, Dr. Osborn conducted a consultative evaluation and diagnosed Plaintiff with mild major depressive disorder and a possible personality disorder with depressive personality traits. ([12] at 411.)

---

[6] COPD is an umbrella term used to describe progressive lung diseases including emphysema, chronic bronchitis, refractory (non-reversible) asthma, and some forms of bronchiectasis. *COPDFoundation*, http://www.copdfoundation.org/What-is-COPD/Understanding-COPD/What-is-COPD.aspx (last visited August 10, 2016).

[7] Non-ST elevation myocardial infraction is a type of heart attack that does not show a change in the ST segment elevation on an electrocardiogram and that results in less damage to the patient's heart. *SecondsCount*, http://secondscount.org/heart-condition-centers/info-detail-2/types-of-heart-attacks#.V6uHDVsrJMw (last visited August 10, 2016).

[8] Mild degenerative spondylosis is a general term for degenerative spinal changes due to osteoarthritis. Dorland's Illustrated Medical Dictionary 859 (29th ed. 2000).

**BURDEN OF PROOF**

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> > 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> >
> > 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> >
> > 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> >
> > 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> >
> > 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988) (citations and footnotes omitted). "The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

**ADMINISTRATIVE LAW JUDGE'S ANALYSIS**

Plaintiff's hearing before the ALJ occurred on February 24, 2014. On May 14, 2014, after considering the testimony and the medical records, the ALJ rendered his decision that Plaintiff was not disabled. ([12] at 16-27.) The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. At step one of the evaluation process,[9] the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 27, 2011, the alleged onset date. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension, obesity, degenerative disk disease, depression, anxiety, possible personality disorder, a history of non-ST elevation myocardial infarction, degenerative joint disease, and chronic obstructive pulmonary disease. ([12] at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equals the severity of one of the listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. ([12] at 19.)

In order to make a determination at step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC").[10] The ALJ found that:

> [T]he claimant has the residual functional capacity to perform light, unskilled work with no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; no more than occasional climbing of ramps or stairs; no more than frequent overhead reaching bilaterally; occasional stooping, crouching, and crawling; no concentrated exposure to dust, fumes, or other respiratory irritants; no more than frequent interaction with co-workers and supervisors; and occasional contact with the general public.

---

[9] The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(a).

[10] "Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

([12] at 21-22.)  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a fast-food worker. ([12] at 25.)  The ALJ determined that such work does not require the performance of work-related activities precluded by the RFC. Although the ALJ found that the Plaintiff could perform past relevant work, the ALJ proceeded to step five and further concluded that there are other jobs in the national economy that she could perform.  The ALJ based this conclusion on the testimony of the VE and Plaintiff's age, education, work experience, and RFC.  The jobs included sorter, bakery worker, and small parts assembler. ([12] at 25-26.)  Accordingly, the ALJ found that Plaintiff was not disabled. ([12] at 27.)

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established."  *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff has raised one assignment of error: the ALJ erred by failing to make a finding regarding the medical necessity of Plaintiff's ambulatory assistive device ("cane"). Plaintiff claims this error was prejudicial.

***Issue: Whether the ALJ is required to make a finding of medical necessity for Plaintiff's cane.***

Before an ALJ is required to make a finding regarding the medical necessity of a hand-held assistive device, medical documentation must substantiate the need. Social Security Rulings ("SSR") 96-9P states in relevant part,

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

1996 WL 374185, at *7. As the Plaintiff explained, there is no definition in the SSR regarding "medical necessity." ([16] at 6.) However, several circuits have elaborated on what documentation is needed to show medical necessity. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) ("though no published appellate decision addresses the precise documentation a claimant must provide, the Third and Tenth Circuits in non-precedential decisions have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary."); *see also Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009)

8

("SSR 96–9p requires more than generalized evidence of a condition that might require use of a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'").

In *McKinney v. Colvin*, this Court found no medical documentation regarding a plaintiff's need for a cane. No. 3:13-CV-900HTW-LRA, 2014 WL 652948, at *6 (S.D. Miss. Feb. 19, 2014). Two doctors observed the plaintiff using a cane at an examination, but the doctors did not determine that the cane was a medical necessity. *Id.* at *5. This Court explained that even though the plaintiff might "use a cane, the record contains no evidence regarding its medical necessity or a physician's report requiring her to do so." *Id.* at *6. Therefore, "[t]he ALJ applied the proper legal standards in evaluating the medical opinions, and" his decision not to make a finding of the medical necessity of the cane is "substantially supported by the evidence." *Id.* Other district courts within the Fifth Circuit have made similar conclusions upon review of ALJ decisions. *See, e.g., Stewart v. Colvin*, No. 1:12-CV-039-BL, 2013 WL 1979738 (N.D. Tex. May 14, 2013); *Garcia v. Colvin*, No. CV M-15-036, 2016 WL 489753, at (S.D. Tex. Jan. 11, 2016), *report and recommendation adopted*, No. CV M-15-036, 2016 WL 454641 (S.D. Tex. Feb. 5, 2016).

In the present case, the record indicates that the ALJ addressed the medical necessity of Plaintiff's cane throughout his decision. First, the ALJ noted that at an August 2012 medical examination, Plaintiff was able to ambulate effectively as defined in 20 C.F.R. § 1.00(B)(2)(b), Subpart P, Appendix 1 and no evidence substantiated that the cane was medically required. ([12] at 19.) At this examination, State agency physician Coulter, M.D., noted that although Plaintiff had an antalgic gait and used a cane, he found no conditions that would impose any objective limitations on her in the following year. ([12] at 23.)

Second, the ALJ considered Plaintiff's testimony that her doctor at Manna Clinic prescribed her the cane. However, the ALJ found no such prescription in her records, nor did he find any of Plaintiff's records to support the medical necessity of a cane. The ALJ suggested Plaintiff's testimony might not be reliable because she told one of her doctors[11] that she obtained her cane from her son, not at the request of a doctor. ([12] at 24.)

The record reflects that the ALJ found no medical documentation establishing the need for Plaintiff's cane as required by SSR 96-9P. While a doctor noted that Plaintiff used a cane, the doctor did not find there was a medical need for the cane, similar to the situation in *McKinney v. Colvin*. In addition, the ALJ noted in his opinion that Plaintiff's "imagery does not support the need for a cane." ([12] at 24.) Thus, nothing in the record suggests a medical necessity for Plaintiff's cane. Accordingly, the Court finds that the ALJ properly considered the medical necessity of Plaintiff's cane. His finding that a cane was not required is supported by substantial evidence.[12]

However, even if the ALJ had erred, reversal is only appropriate if the Plaintiff was prejudiced. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In order to establish prejudice, Plaintiff "must show that, had the ALJ done his duty, [Plaintiff] could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). In this case, Plaintiff argues that the ALJ failed to develop the record regarding the medical necessity of her cane. Plaintiff asserts that had the ALJ developed the record, she would have been limited to sedentary work, rendering her disabled due to her "closely approaching

---

[11] The ALJ wrote that Plaintiff told Dr. Osborn she obtained the cane from her son. ([12] at 24.) However, the record reflects that Plaintiff told Dr. Coulter, not Dr. Osborn, that the cane came from her son. ([12] at 415.)

[12] Other record evidence supports this conclusion. *See* Dr. Coulter's notes *supra* footnote 5. *See also* notes ([12] at 414-15.)

10

advanced age with limited education and no transferable skills from past work." ([16] at 10.) This Court finds this argument unpersuasive. Plaintiff's mere allegations are too speculative to warrant remand. *See Garcia v. Colvin*, No. CV M-15-036, 2016 WL 489753, at *8 (S.D. Tex. Jan. 11, 2016), *report and recommendation adopted*, No. CV M-15-036, 2016 WL 454641 (S.D. Tex. Feb. 5, 2016); *see also Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012).

This Court finds there is substantial evidence supporting the decision, and the Commissioner applied the correct legal standards in evaluating the evidence regarding Plaintiff's cane. Accordingly, the Commissioner's decision should be affirmed.

IT IS, THEREFORE, ORDERED that:

1. The Motion to Affirm the Commissioner's Decision [17] filed by the Defendant is GRANTED;
2. The Complaint [1] is DISMISSED WITH PREJUDICE; and
3. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 11th day of August, 2016.

s/ Michael T. Parker
United States Magistrate Judge
